**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED PROPERTY AND CASUALTY INSURANCE COMPANY, *Plaintiff*,<br><br>v.<br><br>JENNIFER HILLGEN-SANTA, MICHAEL HILLGEN-SANTA, *Defendants*. | No. 3:21-cv-00543-VAB |

**AMENDED RULING AND ORDER ON MOTION FOR DEFAULT JUDGMENT[1]**

United Property and Casualty Insurance Company ("United Property" or "Plaintiff") has

filed suit against Catherine Carmona, Walter Carmona, Jennifer Hillgen-Santa, and Michael

Hillgen-Santa under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a

declaratory judgment that it is not obligated to defend or indemnify Ms. Carmona and Mr.

Carmona ("the Carmonas") in connection with an underlying state court action brought by Ms.

Hillgen-Santa and Mr. Hillgen-Santa ("the Hillgen-Santas" or "Defendants") against the

Carmonas. Am. Compl., ECF No. 10 (June 3, 2021) ("Am. Compl."). United Property also

sought a declaratory judgment that it had no obligation to the Hillgen-Santas in connection with

the state court action. *Id.* ¶ 73.

On January 27, 2022, based upon a stipulation of voluntary partial dismissal, Stip. of

Voluntary Partial Dismissal, ECF No. 33 (Jan. 26, 2022), the Court dismissed with prejudice Ms.

---

[1] This Amended Ruling and Order on Motion for Default Judgment supersedes the Court's Ruling and Order on Motion for Default Judgment of July 6, 2022, ECF No. 38. For the reasons given in the Court's Order, ECF No. 45, granting in part and denying in part Plaintiff United Property and Casualty Insurance Company's Motion to Alter or Amend Judgment, ECF No. 42, references to United Property's duty to defend Defendants Catherine Carmona and Walter Carmona, as well as references to the allocation of defense costs, have been removed. This Amended Ruling and Order addresses only United Property's potential obligation to Defendants Jennifer Hillgen-Santa and Michael Hillgen-Santa.

Carmona and Mr. Carmona from the action, Order Dismissing Case as to Catherine Carmona and

Walter Carmona, ECF No. 34 (Jan. 27, 2022).

Ms. Hillgen-Santa and Mr. Hillgen-Santa have not appeared or responded to the

Complaint or Amended Complaint, and United Property now moves for default judgment against

these Defendants. Notice of Mot. for Default J., ECF No. 31 (Jan. 26, 2022); Aff. in Supp. of

Default J., ECF No. 31-1 (Jan. 26, 2022) ("Def. Mot.").

For the reasons explained below, United Property's motion for default judgment is

**GRANTED in part** and **DENIED in part**.[2]

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[3]

#### 1.  The Homeowners Insurance Policy

On January 9, 2019, United Property issued to Ms. Carmona and Mr. Carmona a

Homeowners Insurance Policy for the policy period March 15, 2019, to March 15, 2020

("Policy"). Am. Compl. ¶ 13; Ex. B to Compl., ECF No. 1-2 (Apr. 20, 2021) ("Policy"). Section

II—Liability Coverage of the Policy provides, in relevant part:

> A.  Coverage E—Personal Liability
> If a claim is made or a suit is brought against an "insured" for
> damages because of "bodily injury" or "property damage" caused
> by an "occurrence" to which this coverage applies, we will:

---

[2] In addition to the motion for default judgment at issue here, United Property has filed a motion for default judgment as to all defendants, including the Carmonas. *See* Notice of Mot. for Default J., ECF No. 22 (Oct. 13, 2021). In light of the Carmonas' appearance in the case and the parties' subsequent stipulation of dismissal as to these defendants, *see* Stip. of Voluntary Partial Dismissal, ECF No. 33 (Jan. 26, 2022), United Property's October 13, 2021, motion for default judgment as to all defendants is **DENIED as moot**.

[3] For the purposes of a default judgment motion, the Court accepts all facts alleged in the Amended Complaint as true. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted."); *see also Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 300 (D. Conn. 2012) ("Upon entry of a default, the court accepts as true all of the factual allegations of the complaint, except those relating to damages." (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992))).

> 2. Pay up to our limit of liability for the damages for which an "insured" is legally liable . . . ; and
> 3. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

Policy at 21.[4]

The Policy further provides that Coverage E—Personal Liability does not apply to "[b]odily injury" or "property damage" which is "expected or intended by an 'insured', even if the resulting 'bodily injury' or 'property damage' . . . is of a different kind, quality or degree than initially expected or intended; or . . . [i]s sustained by a different person, entity or property than initially expected or intended." *Id*. at 23.

The "Premier Plus Endorsement" addendum to the Policy subsequently amends the personal liability coverage as follows:

> The following is added to Coverage E—Personal Liability:
> Personal Injury Coverage
> If a claim is made or suit is brought against an "insured" for damages resulting from an offense, defined under "personal injury", to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. . . . ; and
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the offense has been exhausted by payment of a judgment or settlement.

*Id*. at 37–38. "Personal injury" is defined in the Policy as:

> injury caused by one or more of the following offenses, but only if the offense was committed during the policy period:
> 1. False arrest, detention or imprisonment;
> 2. Malicious prosecution;

---

[4] For purposes of the Policy, pagination refers to the pagination as provided in the Court's Electronic Filing System.

3. Invasion of privacy, wrongful eviction, or wrongful entry;
4. Publication of material, in any manner, that:
    a. Slanders or libels a person or organization;
    b. Disparages a person's or organization's goods, products or services; or
5. Publication of material, in any manner, that violates a person's right to privacy.

*Id*. at 37.

The Policy addendum contains certain enumerated exclusions to the personal injury endorsement, including personal injury "[a]rising out of a criminal act committed by or at the direction of an 'insured.'" *Id*. at 38.

### 2.   The Underlying State Court Action

On May 8, 2019, Ms. Hillgen-Santa and Mr. Hillgen-Santa filed suit in state court against Ms. Carmona and Mr. Carmona ("State Action"). Am. Compl. ¶ 16; *see* Compl., *Hillgen-Santa v. Carmona*, No. FBT-CV19-6085838 (Conn. Super. Ct. filed May 8, 2019). In an amended complaint, the Hillgen-Santas allege that their property ("Hillgen-Santa Property") is directly adjacent to the Carmonas' property ("Carmona Property"), and that the Carmonas interfered with the Hillgen-Santas' construction of a "boundary line fence" on the Hillgen-Santa Property that the Hillgen-Santas allegedly had installed in accordance with a state court order. Ex. A to Compl. at 2 ¶ 7, 3–6 ¶ 15, ECF No. 1-1 (Apr. 20, 2021) ("State Compl.").

The Hillgen-Santas further allege that Ms. Carmona and Mr. Carmona engaged in the following with the intent to inflict emotional distress on the Hillgen-Santas or their minor child:

- playing "excessively loud music, often with explicit, derogatory, and/or racially-charged" language;

- repeatedly parking vehicles in a manner that blocked the driveway to the Hillgen-Santa Property;

- taking possession of and destroying personal property belonging to the Hillgen-Santas;

- using a snow blower on the Carmonas' gravel driveway and deliberately causing gravel to blow onto the Hillgen-Santa Property;

- throwing raw eggs toward the Hillgen-Santa Property;

- driving their vehicles into hedges on the Hillgen-Santa Property and destroying the hedges with clippers and other mechanical devices;

- running a generator beyond legally permissible hours, resulting in noise and diesel fumes entering the Hillgen-Santa Property; and

- calling the police when the Hillgen-Santas requested that the Carmonas cease such behaviors.

*Id*. at 3–6 ¶ 15.

The Hillgen-Santas allege that, as a result of these behaviors, they have suffered emotional distress manifested by "physical and other symptoms," including: the loss of quiet enjoyment of their home; loss of sleep; hypertension; fear; anguish; insomnia; nervousness; loss of appetite; headaches; and concern regarding the "[p]laintiffs' safety and well-being and that of their daughter and their pets." *Id*. at 7 ¶ 18. They seek injunctive relief, actual and punitive damages, and treble damages for the following claims: (1) intentional infliction of emotional distress as to Ms. Carmona (Count One); (2) trespass as to Ms. Carmona (Count Two); (3) nuisance as to Ms. Carmona (Count Three); (4) negligence as to Ms. Carmona (Count Four); (5) defamation as to Ms. Carmona (Count Five); (6) intentional infliction of emotional distress as to Mr. Carmona (Count Six); (7) trespass as to Mr. Carmona (Count Seven); (8) nuisance as to Mr. Carmona (Count Eight); (9) negligence as to Mr. Carmona (Count Nine); (10) defamation as to Mr. Carmona (Count Ten); and (11) unlawful cutting of trees, timber, or shrubbery as to both

defendants (Count Eleven). *Id*.

### 3.   The Homeowners Insurance Claim

On October 5, 2019, counsel for Ms. Carmona and Mr. Carmona notified United Property of the State Action. Am. Compl. ¶ 17.

By letter dated October 24, 2019, United Property advised the Carmonas that it was partially denying coverage because, in part, the facts alleged in the State Action did not constitute an "occurrence" causing "bodily injury" or "property damage" to which the Policy's personal liability provision applies. *Id*. ¶ 30; Ex. C to Compl. at 5–7, ECF No. 1-3 (Apr. 20, 2021) (partial denial of insurance coverage).

United Property further advised the Carmonas that they were not entitled to coverage under the Policy's personal injury endorsement. Ex. C to Compl. at 7–8, ECF No. 1-3 (Apr. 20, 2021).

United Property agreed, however, to provide the Carmonas with a defense based on the amended complaint's allegations of defamation, subject to United Property's partial disclaimer and reservation of rights. *Id*. at 8; Am. Compl. ¶ 31.

On February 11, 2021, the Hillgen-Santas withdrew the defamation counts in the State Action. Am. Compl. ¶ 32.

On March 22, 2021, United Property notified the Carmonas that, in light of the Hillgen-Santas' withdrawal of the only potentially covered claims, United Property was denying coverage and withdrawing its defense as of April 5, 2021. *Id*. ¶ 33; Ex. E to Compl., ECF No. 1-5 (Apr. 20, 2021) (withdrawal of defense and denial of insurance coverage).

### B.  Procedural History

On April 20, 2021, United Property brought this declaratory judgment action. Compl., ECF No. 1 (Apr. 20, 2021).

United Property filed an Amended Complaint on June 3, 2021. Am. Compl.

Mr. Carmona, Ms. Carmona, Ms. Hillgen-Santa, and Mr. Hillgen-Santa did not file an appearance or response to the Complaint or Amended Complaint.

On August 13, 2021, United Property moved for default entry under Federal Rule of Civil Procedure 55(a) as to all defendants. Mot. for Default Entry 55(a), ECF No. 14 (Aug. 13, 2021); Mot. for Default Entry 55(a), ECF No. 15 (Aug. 13, 2021); Mot. for Default Entry 55(a), ECF No. 16 (Aug. 13, 2021); Mot. for Default Entry 55(a), ECF No. 17 (Aug. 13, 2021).

The Clerk of Court granted United Property's motions for default entry on September 14, 2021. Order, ECF No. 18 (Sept. 14, 2021); Order, ECF No. 19 (Sept. 14, 2021); Order, ECF No. 20 (Sept. 14, 2021); Order, ECF No. 21 (Sept. 14, 2021).

On October 13, 2021, United Property moved for default judgment against all defendants. Notice of Mot. for Default J., ECF No. 22 (Oct. 13, 2021).

On October 21, 2021, counsel for Ms. Carmona and Mr. Carmona entered a notice of appearance. Notice of Appearance, ECF No. 24 (Oct. 21, 2021).

On January 26, 2022, United Property filed a joint stipulation to the voluntary dismissal, with prejudice, of United Property's claims against Ms. Carmona and Mr. Carmona only. Stip. of Voluntary Partial Dismissal, ECF No. 33 (Jan. 26, 2022).

On the same day, United Property filed a motion for default judgment as to Ms. Hillgen-Santa and Mr. Hillgen-Santa. Notice of Mot. for Default J., ECF No. 31 (Jan. 26, 2022); Def. Mot.

Based on the joint stipulation of voluntary dismissal, the Court dismissed with prejudice Ms. Carmona and Mr. Carmona from the action on January 27, 2022. Order Dismissing Case as to Catherine Carmona and Walter Carmona, ECF No. 34 (Jan. 27, 2022).

On June 30, 2022, the Court held a motion hearing regarding the pending motion for default judgment as to Ms. Hillgen-Santa and Mr. Hillgen-Santa. Min. Entry, ECF No. 37 (June 30, 2022).

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must obtain an entry of default under Rule 55(a) by showing that the defaulting party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must "seek a judgment by default under Rule 55(b)." *Priestley*, 647 F.3d at 505.

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability," but "it is not considered an admission of damages*." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A court is required, on a motion for default judgment, "to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether [the plaintiff's] allegations establish [the defaulting defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009*) (internal citations omitted)*; *see also Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (summary order) ("Conclusory allegations . . . are insufficient; a complaint must plead 'specific facts or circumstances' supporting them." (quoting *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996)).

Once a court establishes the defaulting defendant's liability, it must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). While all reasonable inferences from the evidence presented are drawn in the moving party's favor, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), "[t]he burden is on the plaintiff to establish its entitlement to recovery," *Bravado Int'l Grp. Merchandising Serv., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009) (citing *Greyhound*, 973 F.2d at 158).

## III.   DISCUSSION

### A.  Rule 55

United Property has satisfied Rule 55(a), as the Clerk of Court has entered orders granting the motions for default entry as to Ms. Hillgen-Santa and Mr. Hillgen-Santa, which are still in effect. *See* Order, ECF No. 20 (Sept. 14, 2021); Order, ECF No. 21 (Sept. 14, 2021); *see also Priestley*, 647 F.3d at 504–05 ("When a party against whom affirmative relief is sought has failed to plead or otherwise defend, a plaintiff may bring that fact to the court's attention. In such circumstances Rule 55(a) empowers the clerk of [the] court to enter a default.").

Rule 55(b) provides that if a plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk, on the plaintiff's request, must enter judgment for that amount and costs against a defendant who has failed to appear in the action. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

In this case, United Property does not request monetary relief and seeks only a declaratory judgment that it has no obligation to the Hillgen-Santas in connection with the underlying state court action. Am. Compl. ¶¶ 35–73. Therefore, Rule 55(b)(2) applies, and the Court must determine from the facts alleged whether the Policy provides coverage to the Carmonas with respect to the allegations in the State Action.[5] *See Metro. Prop. & Cas. Ins. Co. v. Sisbarro*, No. 3:13-CV-537 (MPS), 2015 WL 893328, at \*7 (D. Conn. Mar. 2, 2015) ("Despite [the defendant's] default, [the court] still ha[s] an obligation to construe the policies to determine whether they provide coverage."); *see also Finkel*, 577 F.3d at 84 (on a motion for default judgment following a defendant's default, a court must "determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law"). Although United Property's claims against the Carmonas are not before the court, the insurer's potential obligation to the Hillgen-Santas depends on whether United Property would have a duty under the Policy to indemnify the Carmonas for the Hillgen-Santas' claims in the State Action.[6] *See* Conn. Gen. Stat. Ann. § 38a-321 (providing that a plaintiff who obtains a judgment against a defendant insured by a liability policy "shall be subrogated to all the rights of the defendant and shall have

---

[5] This Court has diversity jurisdiction to hear this case under 28 U.S.C. § 1332. Complete diversity exists as United Property is domiciled and maintains its principal place of business in Florida, and the defendants are all Connecticut citizens. Am. Compl. ¶¶ 4–8. In declaratory judgment cases involving "the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim— not the face amount of the policy." *Amica Mut. Ins. Co. v. Levine*, 7 F. Supp. 3d 182, 187 (D. Conn. 2014) (internal citations and quotation marks omitted). In this case, the allegations in the underlying state court action, including that the Hillgen-Santas are entitled to actual and punitive damages arising from the Carmonas' alleged actions and the Hillgen-Santas' emotional distress arising from such activity, are sufficient to support United Property's allegation that the amount in controversy exceeds $75,000. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (noting that the Second Circuit "has recognize[d] a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy"); *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 442–43 (D. Conn. 2010) (finding diversity jurisdiction in declaratory judgment case where the underlying action alleged, *inter alia*, intimidation based on bigotry or bias, invasion of privacy, libel, trespass, private nuisance, and negligent and intentional infliction of emotional distress).

[6] As noted above, United Property's claims against the Carmonas were dismissed under the parties' stipulation of dismissal. *See supra* note 1. Thus, nothing in this order should be construed as determining rights or obligations between United Property and the Carmonas.

a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer").

### B. The Scope of the Carmonas' Policy

"In determining whether a claim falls within the scope of an insurance policy, the Supreme Court of Connecticut construes broad policy language in favor of imposing a duty to defend on the insurer, and requires a defense [i]f an allegation of the complaint falls even possibly within the coverage." *Ryan v. Nat'l Union Fire Ins. Co.*, 692 F.3d 162, 167 (2d Cir. 2012) (emphasis, internal citation, and internal quotation marks omitted). An insurer's duty to indemnify an insured is narrower than its duty to defend. *DaCruz v. State Farm Fire and Cas. Co.*, 268 Conn. 675, 687 (2004). While the duty to defend depends on the allegations of the complaint, the duty to indemnify turns on the facts established at trial and the theory under which judgment entered in the case. *Id*. at 688. Therefore, if the Court determines based on the complaint that an insurer has no duty to defend an insured, the insurer also has no duty to indemnify the insured. *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 460 (D. Conn. 2010).

"It is the function of the court to construe the provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law[.]" *Peerless Ins. Co. v. Disla,* 999 F. Supp. 261, 263 (D. Conn. 1988). "An insurance policy is to be interpreted by the same general principles that govern the construction of any written contract . . . . [T]he determinative question is the intent of the parties. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning[.]" *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.,* 311 Conn. 29, 37–38 (2014) (internal quotation marks omitted) (quoting *Johnson v. Conn. Ins. Guar. Ass'n,* 302 Conn. 639, 643 (2011)).

11

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Johnson*, 302 Conn. at 643 (internal citation and quotation marks omitted). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Id.* (internal citation and quotation marks omitted).

United Property argues that the Hillgen-Santas' claims are not covered by the Policy because every count alleged in the Hillgen-Santas' complaint describes conduct that was "intentional," regardless of whether the Carmonas expected or intended the specific damage or injury alleged by the Hillgen-Santas. Def. Mot. ¶¶ 16–17. In United Property's view, these actions do not qualify under the Policy as an "occurrence," defined in the Policy as an "accident," and fall within the Policy's exclusion applicable to intentional acts. *Id.* ¶¶ 16–17, 20.

United Property further contends that the Hillgen-Santas' trespass and nuisance claims are not covered by the Policy because these claims do not constitute an enumerated offense under the Policy's personal injury clause. Ex. E to Compl. at 7–8, ECF No. 1-1 (Apr. 20, 2021).

The Court agrees, in part.

### 1. Personal Liability

Coverage E—Personal Liability of the Policy provides personal liability coverage for a claim made or a suit brought against an insured for damages because of "bodily injury" or "property damage" caused by an "occurrence." Policy at 21. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: . . . '[b]odily injury'; or . . .

12

'[p]roperty damage.'" *Id*. at 6. It further excludes from Coverage E—Personal Liability "[b]odily injury" or "[p]roperty damage" which is "expected or intended by an 'insured', even if the resulting 'bodily injury' or 'property damage' . . . is of a different kind, quality or degree . . . or . . . [i]s sustained by a different person, entity or property than initially expected or intended." *Id*. at 23.

As a matter of law, "[t]he policy language is clear." *Mara*, 699 F. Supp. at 454. As courts in this District have recognized, *see, e.g.*, *id*., Connecticut common law defines an "accident" as an "unintended occurrence," *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 590 (1990), an "unexpected happening," *Comm. Contractors Corp. v. Am. Ins. Co.*, 152 Conn. 31, 42 (1964), or an "unforeseen[,] unplanned" event, *Vt. Mut. Ins. Co. v. Walukiewicz*, 290 Conn. 582, 594 (2009) (internal citation and quotation marks omitted). By their "natural and ordinary meaning," and "reading the provisions together," the Policy's provisions thus provide that "intentional bodily injury or property damage[] inflicted on others" falls outside the Policy's scope. *Mara*, 699 F. Supp. at 448.

Regardless of whether an insurer "denies coverage on the ground that a complaint fails to allege an 'occurrence,' defined under a policy as an 'accident,'" or on the ground that the alleged act falls within an intentional act exclusion, "the ultimate inquiry—whether the act was intentional—is the same." *Gen. Ins. Co. of Am. v. Okeke*, 182 Conn. App. 83, 98 (2018) (quoting *State Farm Fire & Cas. Co. v. Tully*, 322 Conn. 566, 571 n.8 (2016)). In this case, assuming, without deciding, that the Hillgen-Santas' alleged harm in the State Action constitutes "bodily injury" or "property damage" as defined in the Policy, these allegations do not qualify for coverage because the Hillgen-Santas allege that the Carmonas intentionally engaged in conduct that they expected or intended would result in the alleged harm.

13

In their amended complaint, the Hillgen-Santas allege: (1) intentional infliction of emotional distress (Counts One and Six); (2) trespass (Counts Two and Seven); (3) nuisance (Counts Three and Nine); (4) negligence (Counts Four and Nine); and (5) the unlawful cutting of trees, timber, or shrubbery (Count Eleven). State Compl.

Each of these counts is based on the Hillgen-Santas' allegations that the Carmonas repeatedly and deliberately undertook acts with the intent to cause emotional distress to the Hillgen-Santas, including by: playing excessively loud music with explicit, derogatory, or racially-charged lyrics, and leaving such loud music playing when the Carmona Property was unoccupied; refusing, upon the Hillgen-Santas' request, to move vehicles that blocked the driveway to the Hillgen-Santa Property; taking possession of personal property belonging to the Hillgen-Santas and destroying or refusing to return such items; blowing gravel onto and propelling raw eggs towards the Hillgen-Santa Property; hacking and destroying antique hedges on the Hillgen-Santa Property; and interfering with the Hillgen-Santas' attempts to install a fence in accordance with a state court order, including by "approaching [Mr.] Hillgen-Santa and a fence contractor in a hostile manner, yelling obscenities and verbalizing [the Carmonas'] intent to disregard said court orders." *Id*. at 3–5 ¶ 15, 15–18 ¶ 15.

Based on these allegations, the Carmonas' alleged actions were intentional, and the alleged harm resulting from these acts was "foreseeable, expected, and intended." *Mara*, 699 F. Supp. at 452–54 (insurance policy's exclusion for intentional acts "excludes coverage for intentional acts, which foreseeably result in bodily injury [or] property damage[]"); *see also Middlesex Mut. Assur. Co. v. Hitchcock*, No. CV 990431600, 2000 WL 288279, at *2 (Conn. Super. Ct. Mar. 8, 2000) (insurer had no duty to defend where defendant's series of harassing and obscene telephone calls were excluded under the insurance policy because such calls could

14

not be deemed unintentional). Each of the counts in the Hillgen-Santas' complaint, furthermore, incorporates the preceding allegations by reference, and includes additional allegations that suggest the Carmonas intentionally engaged in behavior that they expected or intended would cause the alleged harm. *See* State Compl.

This reasoning applies with equal force to Counts Four and Nine of the State Action. Although framed in terms of negligence, Counts Four and Nine are based on "a series of [alleged] intentional, . . . harmful acts," *Mara*, 699 F. Supp. at 453, and therefore do not impose on United Property a duty to defend or indemnify the Carmonas under the Policy's personal liability clause, *see Allstate Ins. Co. v. Jussaume*, 35 F. Supp. 3d 231, 237 (D. Conn. 2014) ("It is immaterial that [the state court plaintiff] has labeled one count against Jussaume as being based on an 'intentional act' and another count as being based on 'negligent contact'; what matters is whether the facts alleged in the Blanchard Complaint could possibly establish that Blanchard's injuries were caused by an occurrence."); *Mara*, 699 F. Supp. at 458 (insurer had no duty to defend policyholders where the underlying complaint's negligent infliction of emotional distress claim was based on "intentional acts to cause [the plaintiffs] harm"); *State Farm Fire & Cas. Co. v. Bullock,* No. 387111, 1997 WL 309584, at *4 (Conn. Super. Ct. May 30, 1997) (negligence claim did not create a duty to defend the policyholders where the "factual allegations manifestly describe an intentional assault").

Accordingly, United Property has no potential obligation to the Hillgen-Santas under the Policy's personal liability provision.

### 2. Personal Injury

In addition to the Policy's personal liability clause, the Policy includes a "Premier Plus Endorsement" addendum, under which United Property will defend or indemnify the insured for

any claim made or suit brought against the insured for damages resulting from a "personal injury" offense. Policy at 37–38. The addendum defines "personal injury" as an "injury arising out of one or more" of a list of enumerated offenses, including "[i]nvasion of privacy, wrongful eviction[,] or wrongful entry," if committed during the Policy period. *Id*. at 37. "Wrongful entry" is not defined in the Policy. The addendum further provides that "[w]ith respect to the coverage provided by this endorsement, Section II—Exclusions" applicable to the Policy's personal liability coverage "is replaced by" an enumerated list of exceptions to coverage under the personal injury clause. *Id*. at 38. This list includes personal injury "[a]rising out of a criminal act committed by or at the direction of an 'insured.'" *Id*.

United Property argues that it has no potential obligation based on the Hillgen-Santas' trespass and nuisance claims because such claims do not constitute a personal injury offense as defined in the Policy. Ex. C to Compl. at 7, ECF No. 1-3 (Apr. 20, 2022). Specifically, United Property argues that, as a matter of law, the enumerated offense of "wrongful entry" does not encompass claims brought by neighboring property owners. *Id*.; Ex. E to Compl. at 6, ECF No. 1-5 (Apr. 20, 2021). United Property further contends that the Policy's "criminal act" exclusion—applicable to a personal injury offense "arising out of a criminal act committed by or at the direction of an 'insured,'" Policy at 38—also bars coverage for the underlying trespass and nuisance claims, as these claims are "based on allegations of the insureds' deliberate illegal entry onto plaintiffs' land, which is at least a criminal infraction under applicable law," Ex. C to Compl. at 7, ECF No. 1-3 (Apr. 20, 2022).

Insofar as United Property seeks to deny coverage on the grounds that "wrongful entry" does not encompass a claim by a neighboring property owner, United Property fails to cite to a case interpreting Connecticut law that supports this conclusion. *Cf. Spaziani v. Harleysville*

16

*Worcester Ins. Co.*, No. CV044000309S, 2005 WL 1273897, at *2 (Conn. Super. Ct. May 4,

2005) ("If the complaint alleges a wrongful entry into premises that a person occupies, it is a

personal injury under the Policy regardless of whether it is labeled trespass, negligence, nuisance

or a violation of civil rights. . . . The allegation that the plaintiff towed an automobile from [the

defendant's] property in order to facilitate a trespass [by the plaintiff's neighbor] falls within the

broad definition of personal injury in that it was a wrongful entry into [the defendant's]

property."); *Nicolosi v. Ferry*, No. CV990334563S, 2002 WL 1041736, at *4 (Conn. Super. Ct.

Apr. 30, 2002) ("Trespass to property occurs when there is a wrongful entry onto the land of

another by one who has neither the license nor privilege to enter.").

Taking United Property's allegations as true and drawing all reasonable inferences in its

favor, *see Finkel*, 577 F.3d at 84, United Property also has not shown that the Carmonas' alleged

intentional "invas[ion], intrus[ion], and/or ent[rance] upon the Hillgen-Santa Property"

constitutes at least a criminal infraction under applicable law, State Compl. at 9, ¶ 15. As an

initial matter, United Property fails to identify an applicable criminal statute on the basis of

which coverage was denied. Even in cases where Connecticut law criminalizes damage to the

tangible property of another, a person is only guilty of such conduct when the damage exceeds

$1,500.00. *See* Conn. Gen. Stat. § 53a-115(a) ("A person is guilty of criminal mischief in the

first degree when . . . [w]ith intent to cause damage to tangible property of another and having no

reasonable ground to believe that such person has a right to do so, such person damages tangible

property of another in an amount exceeding one thousand five hundred dollars.").

In this case, the factual allegations contained in the Hillgen-Santas' Complaint do not

provide a sufficient basis for the Court to assess the value of the alleged damage to the Hillgen-

Santa Property. *See Allstate Ins. Co. v. Neleber*, No. 3:14-CV-00629 (DJS), 2015 WL 5442828,

at *6 (D. Conn. Sept. 15, 2015) (concluding that "[t]he meager factual allegations contained in the Astram Complaint are not sufficient to demonstrate the applicability of the policy's intentional or criminal acts exclusion"); *cf. Allstate Ins. Co. v. Wilson*, 18 F. Supp. 3d 156, 164 (D. Conn. 2014) (holding that "[i]t is clear that the allegations . . . in the *Doe* Complaint also constitute criminal conduct," particularly where "counsel . . . confirmed at oral argument that juvenile criminal charges stemmed from [the] incident, underscoring that the conduct alleged was both intentional and criminal").

Accordingly, the Court will grant in part and deny in part United Property's motion for default judgment. While United Property has no obligation to the Hillgen-Santas under the Policy's personal liability provision, United Property is not, at this stage of the proceedings, entitled to a declaratory judgment that it has no obligation to the Hillgen-Santas in connection with their trespass and nuisance claims.

## IV.    CONCLUSION

For the foregoing reasons, United Property's motion for default judgment is **GRANTED in part** and **DENIED in part**.

While United Property has no obligation to the Hillgen-Santas with respect to the Policy's personal liability provision, United Property is not, at this stage of the proceedings, entitled to a declaratory judgment that it has no obligation to the Hillgen-Santas in connection with their trespass and nuisance claims.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of August, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE